**MESSNER REEVES, LLP**
7250 North 16th Street, Suite 410
Phoenix, Arizona 85020
Telephone (602) 635-4002

Julie A. Pace, SBN 014585
jpace@messner.com
David A. Selden, SBN 007499
dselden@messner.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crown Polymers Corporation, a Nevada corporation,<br><br>                         Plaintiff,<br><br>v.<br><br>Donald Rea and Jane Doe Rea; Brendon Crookes and Jane Doe Crookes; and Classic Garage Inc., an Arizona Corporation; John and Jane Does, I-X; and ABC Doe Corporations, I-X.<br><br>                         Defendants. | NO. _____<br><br>**COMPLAINT** |

Plaintiff Crown Polymers Corporation ("Plaintiff" or "Crown Polymers") by and through counsel undersigned, for its Complaint against Donald Rea, Brendon Crookes, and Classic Garage Inc., (collectively referred to as "Defendants"), hereby allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Crown Polymers is a corporation organized under the laws of the State of Nevada with its principal place of business in McHenry County, Illinois.

2. Defendant Donald Rea is a resident of Yavapai County, Arizona.

3. Defendant Brendon Crookes is a resident of Yavapai County, Arizona.

4. Defendant Classic Garage, Inc. is an Arizona corporation with its principal place of business in Yavapai County, Arizona.

{06855181 / 3}

5. Upon information and belief, Defendant Jane Doe Rea is a resident of Yavapai County, Arizona, is the spouse of Donald Rea, and all acts of Donald Rea alleged herein were committed for the benefit of the marital community of Donald Rea and Jane Doe Rea, and Plaintiff will move to amend this Complaint to substitute her correct name for the fictitious name used herein.

6. Upon information and belief, Defendant Jane Doe Crookes is a resident of Yavapai County, Arizona, is the spouse of Brendon Crookes, and all acts of Brendon Crookes alleged herein were committed for the benefit of the marital community of Brendon Crookes and Jane Doe Crookes. Jane Doe Crookes is a fictitious name for the spouse of Brendon Crookes, and Plaintiff will move to amend this Complaint to substitute her correct name for the fictitious name used herein.

7. John and Jane Does I-X are fictitious names of parties whose true names are currently unknown. At such times as their true names are discovered, Plaintiff will amend this Complaint accordingly.

8. ABC Doe Corporations I-X are fictitious names of parties whose true names are currently unknown. At such time as their true names are discovered, Plaintiff will amend this Complaint accordingly.

9. Jurisdiction is proper in this Court as Plaintiff is incorporated in Nevada with its principal place of business in Illinois, Defendants are domiciled or incorporated in Arizona, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

10. Venue is proper in this Court.

## FACTUAL BACKGROUND

**A. Classic Garage Purchased Products from Crown Polymers for Years with No Problems.**

11. Defendant Classic Garage is an Arizona corporation that applies epoxy floor coating systems.

12. Donald Rea is the owner of Classic Garage and operated Classic Garage from

{06855181 / 3}    2

2018 through 2019 and then beginning again in March 2022.

13. Brendon Crookes is the son-in-law of Donald Rea and until 2019 did not have any experience in the epoxy flooring industry.

14. In 2018, a subcontractor with whom Classic Garage did business introduced Jared Cervantes, an independent sales representative who promoted sales of Crown Polymers products.

15. Classic Garage first began purchasing epoxy flooring products from Crown Polymers in 2018.

16. During 2018 and 2019 Classic Garage was still using epoxy products supplied by Arizona Polymer Flooring, Inc.'s ("APF"), a wholly unrelated company.

17. In 2019, Brendon Crookes told Jared Cervantes that Classic Garage was experiencing issues with APF's products and that the APF epoxy coatings were failing.

18. Unhappy with the results of their application of APF's products, Classic Garage decided to purchase Crown Polymers epoxy flooring products rather than continuing to buy from APF, although Classic Garage continued to use APF products.

19. Classic Garage did not report or communicate any failure, issue, or concern with any Crown Polymers products until Brendon Crookes took over the operations of Classic Garage in late 2019.

20. Crown Polymers' products are used by customers throughout the country and not a single customer other than Defendants have alleged the purported problems that Defendants have alleged.

**B.  Defendant Donald Rea Transferred Ownership of Classic Garage to His Son-in-Law, Brendon Crookes, and Brendon Crookes Began Complaining to Crown Polymers about the Epoxy Floor Products.**

21. In late 2019, Donald Rea transferred the operation of Classic Garage to Brendon Crookes.

22. At the time of the transfer, Brendon Crookes did not have any experience in the epoxy flooring business.

23. After the transfer of ownership, Brendon Crookes called Jared Cervantes regarding alleged failures of certain flooring systems that Classic Garage had installed at its customers' locations.

24. During this phone call, Brendon Crookes admitted to Jared Cervantes that Classic Garage was mixing and matching epoxy products from different epoxy manufacturers and had used APF's products at the locations where Classic Garage reported alleged failures.

25. Jared Cervantes troubleshooted Classic Garage's issues over the phone on multiple occasions with Classic Garage's subcontractor and Brendon Crookes.

26. During the troubleshooting sessions, Jared Cervantes became aware of the fact that Classic Garage was mixing APF's pigments with Crown Polymers products, which voids the warranty on the Crown Polymers products and can cause other issues.

27. Additionally, Classic Garage was adding too much APF pigment to Crown Polymers products and was following APF's pigment guidelines instead of Crown Polymers' guidelines.

28. When testing epoxy floor systems, Crown Polymers generally preps the surface of the concrete slab to which the epoxy products are applied.

29. Although, Crown Polymers was not able to test or observe the condition of the concrete slabs at the alleged faulty customer locations, Jared Cervantes agreed to fly to Arizona to assist Classic Garage in finding the cause of its flooring issues.

30. Once in Arizona, Jared Cervantes visited approximately 5 customer locations where Classic Garage alleged the flooring systems were failing.

31. Jared Cervantes and Brendon Crookes' relationship diminished after Jared Cervantes' visit to Arizona because Jared Cervantes communicated to Brendon Crookes that Classic Garage's failures were not due to Crown Polymers' products.

C. **Crown Polymers Concluded That Classic Garage's Flooring Issues Stem from Classic Garage's Improper Mixing and Application Practices.**

32. Upon inspection and investigation, Crown Polymers concluded that Classic

Garage's flooring failures were attributable to improper mixing and composition by Classic Garage and to improper application.

33. Specifically, during his troubleshooting sessions, Jared Cervantes noted that the liquid Classic Garage was applying was not the correct consistency because Classic Garage was mixing and matching products from different manufacturers and was not following an appropriate pigment ratio.

34. Brendon Crookes is aware that Crown Polymers products are not to be mixed with products of other manufacturers. Doing so voids the warranty on the product and adversely affects the durability of the product.

35. Additionally, manufacturers promulgate different mixing ratios and instructions, and when Classic Garage mixed APF products with Crown Polymers products, Classic Garage fundamentally altered the effectiveness and functionality of the flooring system.

36. Crown Polymers and Jared Cervantes communicated these findings with Brendon Crookes and Classic Garage.

37. Brendon Crookes and Classic Garage were aware that their practices of mixing epoxy flooring systems and applying the flooring systems caused the problems Classic Garage had experienced.

**D.  Classic Garage Blames APF for Classic Garage's Flooring Failures and Demands Payment from APF.**

38. Classic Garage first blamed APF for Classic Garage's epoxy flooring failures.

39. Prior to 2021, Classic Garage demand that APF pay Classic Garage for the costs associated with re-doing the faulty customer flooring systems.

40. APF did not accept liability for Classic Garage's failures.

41. Because APF failed to pay Classic Garage, Classic Garage targeted Crown Polymers.

**E.  Classic Garage Demanded That Crown Polymers Pay Classic Garage for Classic Garage's Failed Epoxy.**

42. Once APF denied responsibility for Classic Garage's flooring failures, Classic Garage transferred the blame for its own failures to Crown Polymers.

43. Classic Garage sent a demand letter to Crown Polymers demanding that Crown Polymers take full financial responsibility for Classic Garage's failures. Crown Polymers did not accept liability for Classic Garage's failures.

44. In Classic Garage's January 11, 2022 letter to Crown Polymers, Classic Garage again demanded payment from Crown Polymers before it would even allow Crown Polymers to re-inspect the faulty flooring systems.

45. Upon its investigation, Jared Cervantes' multiple troubleshooting sessions, and his Arizona visit, Crown Polymers did not accept liability for the failures Classic Garage had experienced.

**F.  Donald Rea and Brendon Crookes Decided to Forego Legal Remedies and Instead Posted Defamatory Remarks about Crown Polymers on Social Media.**

46. On November 27, 2021, Brendon Crookes resorted to social media to target Crown Polymers and make defamatory statements about Crown Polymers.

47. In his November 27, 2021, Facebook post, Brendon Crookes alleges that he was harassed by Crown Polymers and Jared Cervantes, stating, "I was harassed and bullied into taking down the review before [Jared Cervantes] would travel."

48. In his post, Brendon Crookes further attacked the credibility, profession, and business of Crown Polymers by falsely stating that Crown Polymers products had a "material defect[.]"

49. Further, Brendon Crookes published that Crown Polymers does not take care of its customers and that Crown Polymers is the reason for Classic Garage "barely surviving."

50. Subsequently, Donald Rea published a Facebook comment that disparaged Crown Polymers' business reputation by saying that Crown Polymers "blame[s] the

customer for its [Crown Polymers] total failure."

51. Donald Rea further stated that Crown Polymers is the reason for Classic Garage's inability to pay its workers and that Crown Polymers' products contain manufacturing defects.

52. In conjunction with Donald Rea's and Brendon Crookes' publishing defamatory statements about Crown Polymers, Brendon Crookes published pictures showing faulty flooring systems to create the impression that Crown Polymers was the cause of such faulty floors.

53. When confronted with their defamatory statements, Brendon Crookes and Donald Rea, through their attorney, denied wrongdoing and refused to remove the defamatory posts.

54. Donald Rea's and Brendon Crookes' public posts, comments, and pictures are inaccurate, false, and detrimental to Crown Polymers' reputation within the epoxy flooring industry.

## CLAIM FOR RELIEF

### Defamation

### (Against All Defendants)

55. Crown Polymers realleges and incorporates by this reference all of the matters set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

56. Defendants made false statements concerning Plaintiff and targeted Plaintiff's business, profession, and trade reputation. Accordingly, the defamatory statements constitute defamation *per se.*

57. Defendants' false statements include, but are not limited to, stating that (i) Crown Polymers "harassed and bullied" Brendon Crookes; (ii) technical specifications of the Crown Polymers products were false despite Classic Garage's knowledge that Classic Garage was using Crown Polymers' products in an incorrect manner by mixing Crown Polymers and APF products; (iii) Crown Polymers products have a "material defect;" (iv) "Jared admit[ed] the product had an issue"; (v) "Crown Polymers' products have a "20%-

25% reported failure rate"; (vi) Crown Polymers "blame[s] the customer for its failure"; (vii) Classic Garage is on "life support due to [Crown Polymers]"; (viii) Crown Polymers is "ignoring a very serious issue, demonstrating how much [Crown Polymers] really care[s] about their customers"; and (x) Crown Polymers products have "manufacturing defects!"

58.     Crown Polymers did not harass or bully Brendon Crookes or Donald Rea, nor did Crown Polymers or Jared Cervantes "admit the product had an issue."

59.     Defendants are aware that Crown Polymers denies the basis of the defamatory statements and that the statements are false and not supported by the facts or evidence in this matter.

60.     Plaintiff has been damaged by the defamatory remarks in an amount to be proven at trial.

61.     At all times relevant to this matter, Defendants acted in a willful and wanton manner, with the intent to cause harm to Plaintiff, and with an evil mind so as to justify an award of punitive damages against Defendants in an amount sufficient to punish Defendants and to deter Defendants and others from engaging in similar conduct in the future.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff Crown Polymers Inc. respectfully requests judgment in its favor and against Defendants as follows:

A.     For economic and consequential damages in an amount to be proven at trial;

B.     For exemplary and punitive damages in an amount sufficient to punish Defendants for engaging in the tortious conduct described herein and to deter Defendants and others from engaging in similar conduct in the future, in an amount to be determined at trial;

C.     For injunctive relief requiring Defendants to cease their wrongful conduct and to delete all defamatory posts, comments, pictures, or the like from any and all online forums, social media platforms, and review boards;

D.     For an award of Crown Polymers reasonable costs and attorneys' fees pursuant to A.R.S. §§ 12-341, 12-341.01(A), 44-4404(3), and/or other applicable statutes and rules;

E. For statutory pre-judgement and post-judgment interest on the foregoing amounts at the maximum rate allowed by law;

F. For Defendants to make a public apology and retraction in trade print media acknowledging their false posts, comments, pictures, and the like.

G. For such other and further relief as the Court deems just and appropriate.

DATED this 18th day of November, 2022.

**MESSNER REEVES, LLP**

By: /s/ *David A. Selden*
    Julie A. Pace
    David A. Selden
    *Attorneys for Plaintiff*